**Sidney C. PETERMAN et al.,**

v.

**Priscilla CLEGG et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 10, 1994.
Decided May 26, 1994.

Jacob Apuzzo, Kennebunk, for plaintiffs.

Stephen C. Chute, Chute & Associates, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ.

RUDMAN, Justice.

Priscilla Clegg and Debra Nash appeal from the judgment entered in the Superior Court (York County, *Cole, J.*) holding Clegg and Nash jointly and severally liable with John Peterman and the Seascape Corporation ("Seascape") to Sidney and Susan Peterman ("the Petermans"). Clegg and Nash contend that their personal guaranties of the promissory note issued by Seascape to the Petermans are unenforceable. We affirm the judgment.

Seascape developed a condominium project in Old Orchard Beach. John Peterman, who is the president of Seascape and Sidney Peterman's brother, arranged a loan of $40,000 from "the Petermans" to finance the purchase of furnishings for some of the units. John, and the appellants, Debra Nash and

Priscilla Clegg, who were all shareholders, directors, and officers of the corporation, signed a guaranty assuring payment of the debt owed to the Petermans. Seascape never made any payment on the debt evidenced by Seascape's promissory note.

At trial, Nash and Clegg denied personal liability on the guaranty. They contended that they never intended to sign a personal guaranty, and that the corporation never delivered the guaranty to the Petermans. Both women acknowledged that the signatures on the guaranty appeared to be authentic, but testified that they did not recall signing the guaranty, and never intended to assume personal liability. John Peterman, who signed as both a maker and a witness to the signatures on the guaranty, testified that he would not have witnessed their signatures if they had not signed the guaranty, but that he could not remember the event specifically. The court found as a fact that the signatures were genuine. Although no fraud was alleged, the court also found as a fact that no fraud took place. Nash and Clegg had also contended that the document was at best a draft, not intended to be final and binding, but the court rejected that argument as well.

The Petermans do not possess an original of the guaranty. Sidney Peterman offered a copy of the guaranty, and testified that he thought he had received an original after the transaction, but could not be sure. When he checked his files, he found only the copy. John Peterman testified that he thought he had delivered the original to Sidney, but that he still had an original in his possession. The court ruled that John had accepted delivery as the Petermans' agent.

■ Clegg and Nash first challenge the sufficiency of the evidence to support the court's finding that they knowingly accepted personal liability of the debt owed to the Petermans. Their argument is without merit. Turning the standard of review on its head, Clegg and Nash contend that "[t]he fact of the signed guaranty in this case is insufficient to overcome [their] testimony" that they never intended to guarantee the note personally. Their argument simply rehashes the facts and raises no point of law.

At best, the testimony by Clegg and Nash shows that they made a unilateral mistake. As Corbin puts it: "One who signs or accepts a written instrument without reading it with care is likely to be surprised and grieved at its contents later on. In most cases he has been held bound in accordance with its written terms." 3 Arthur Linton Corbin, *Corbin on Contracts* § 607 at 656 (1960 & Supp. 1993) (citing numerous cases). A unilateral mistake is grounds for voiding a contract only if the other party had reason to know that the mistaken party was operating under a misimpression. *Id.* at 662. *See also Federal Deposit Ins. Corp. v. Rusconi*, 796 F.Supp. 581, 587–88 (D.Me.1992) (refusing to hear parol evidence that guarantors did not knowingly sign the guaranty when the guaranty was unambiguous on its face); *Bank of Santa Ana v. Molina*, 1 Cal.App.3d 607, 81 Cal.Rptr. 885, 890 (Ct.App.1969) ("understandable" lapse of memory of signing does not deprive document of legal meaning). The signed contract is sufficient evidence to overcome the defendants' testimony to the contrary.

■ Nash and Clegg next challenge the delivery of the guaranty to the Petermans. That contention is also without merit. Nash and Clegg emphasize the fact that the Petermans apparently never received an original of the guaranty, and attack the trial court's finding that John Peterman accepted delivery as the Petermans' agent. Corbin defines delivery simply as "some overt act indicating that [the party executing the contract] intends it to be immediately operative." Corbin, *supra* § 244. *See O'Mohundro v. Mattingly*, 353 S.W.2d 786, 792 (Mo.1962) ("Delivery of a deed may be made so as to pass title even though the grantor retains possession of the deed. It is the intention of the parties, especially that of the grantor, which controls.") John Peterman made such an overt act by mailing a copy of the guaranty to his brother, Sidney. John Peterman intended to deliver the guaranty to Sidney and Sidney believed that he had received it. The intent of the parties was that the guaranty be binding.

■ Nor is there any reason John could not faithfully act as agent for both parties.

*Beasley v. Trontz,* 677 S.W.2d 891, 894 (Ct. App.Ky.1984) (agent may act for adverse parties with knowledge and consent of parties). *See also O'Donnell v. CBS, Inc.,* 782 F.2d 1414, 1420 (7th Cir.1986) (recognizing dual agency); *Naviera Despina, Inc. v. Cooper Shipping Co., Inc.,* 676 F.Supp. 1134, 1141 (S.D.Ala.1987) (dual agency only with full disclosure and consent). It is hard to believe that Nash and Clegg were unaware that Sidney is John's brother and that John was acting for Sidney at the closing (which no one seems to remember clearly). Nash and Clegg offered no evidence that they were ignorant of the circumstances surrounding the loan—the only lapse in their memory relates to their assumption of personal liability. They remember receiving the money and buying the furniture. Although the finding that John acted as Sidney's agent is unnecessary on these facts, we do not agree with Nash and Clegg that the court made any error of law.

Finally, the guaranty provides that the guarantors shall pay reasonable attorney fees incurred in collection on the guaranty. The Petermans' reasonable attorneys fees for this appeal should be determined by the trial court.

The entry is:

Judgment affirmed. Remanded with instructions to award the Petermans reasonable attorney fees for the appeal.

All concurring.